UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SNOPES MEDIA GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> BARBARA MIKKELSON, <br><br> Defendant. | Case No. 21-cv-1730-BAS-DEB <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 4)** |

Plaintiff Snopes Media Group ("Snopes Media") filed a First Amended Complaint ("FAC") against Barbara Mikkelson, alleging two causes of action for: (1) violation of California Penal Code § 496 (receipt of stolen funds), and (2) unjust enrichment. (ECF No. 3.) Plaintiff alleges that Ms. Mikkelson received stolen funds embezzled by Proper Media, and that Ms. Mikkelson extorted funds from Proper Media that rightfully belonged to Snopes Media. Plaintiff also alleges that Ms. Mikkelson is unjustly enriched by retention of those funds. Before the Court is Ms. Mikkelson's motion to dismiss Plaintiff's action for failure to state a claim. (ECF No. 4.) Plaintiff responded (ECF No. 5) and Defendant replied (ECF No. 6).

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** Defendant Barbara Mikkelson's motion to dismiss.[1]

## I.     BACKGROUND

Plaintiff Snopes Media is the owner of the Snopes.com website, founded in 2003 by then husband and wife, David Mikkelson and Barbara Mikkelson. (FAC ¶ 9.) Proper Media is an internet media company founded in 2015 by Drew Schoentrup, Christopher Richmond, Tyler Dunn, Vincent Green, and Ryan Miller. (*Id.* ¶ 10.) On August 11, 2015, Snopes Media entered into a written one-year contract with Proper Media entitled the General Service Agreement ("GSA"). (*Id.* ¶ 11.) Under this agreement, Proper Media agreed to procure, place, and manage advertising on Snopes.com and to compensate Snopes Media based on advertising invoicing on a monthly basis. (*Id.* ¶¶ 13–14.) In April 2016, Mr. Mikkelson told Proper Media to pause the disbursement of funds into Snopes Media's bank account because there were alleged unauthorized withdrawals by Ms. Mikkelson. (*Id.* ¶ 22.)

Around the same time, after the divorce of Ms. Mikkelson and her husband resulted in a 50/50 split of Snopes Media shares, the principals of Proper Media offered to buy Ms. Mikkelson's 50% interest in Snopes Media. (*Id.* ¶¶ 16–17.) Those parties entered into a written Stock Purchase Agreement ("SPA") giving the principals of Proper Media shares in Snopes Media in their individual capacities. (*Id.* ¶¶ 18–21.) A portion of the purchase price was due at closing, and the rest was due in monthly installments pursuant to a promissory note attached to the SPA. (*Id.* ¶ 21.) After Ms. Mikkelson sold her 50% interest, Schoentrup took over as the bookkeeper for Snopes Media in July 2016. (*Id.* ¶ 24.) Once Schoentrup became bookkeeper, Proper Media did not return the advertising

---

[1] In light of the First Amended Complaint, the initial complaint is no longer operative. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[T]he general rule is that an amended complaint supercedes the original complaint and renders it without legal effect[.]"). Accordingly, the Court **TERMINATES AS MOOT** Defendant's first motion to dismiss the complaint (ECF No. 2).

revenues withheld from Snopes Media since April 2016. (*Id.* ¶¶ 25–29.) Instead, Proper Media used the advertising revenues due to Snopes Media to pay interest to Ms. Mikkelson while the principals tried to get a loan for the down payment to purchase her ownership interest. (*Id.* ¶ 27.) Schoentrup, Richmond, and Dunn used Snopes Media's advertising revenues to pay Ms. Mikkelson under the Promissory Note through 2017. (*Id.* ¶ 30.) Proper Media withheld Snopes Media's advertising revenues for months at a time and concealed from Snopes Media the use of the advertising revenues to pay Ms. Mikkelson. (*Id.* ¶¶ 31–32.)

In September 2016, Ms. Mikkelson approached Schoentrup and demanded additional sums that she claimed were outstanding to her. (*Id.* ¶ 35.) She demanded these funds via written threats to disseminate false and defamatory information about her ex-husband Mr. Mikkelson. (*Id.* ¶ 36.) She claimed this information would affect the Snopes Media brand and website – and therefore the stock price. (*Id.* ¶¶ 35–36.) To resolve these threats, Ms. Mikkelson and Schoentrup entered into the "Settlement Agreement." (*Id.* ¶ 37.) When Snopes Media attempted to end the GSA with Proper Media in March 2017, Proper Media wrongly held itself out to be a 50% owner of Snopes Media. (*Id.* ¶¶ 38–42.)

On October 4, 2017, Proper Media, Schoentrup, Richmond, Dunn, and Ms. Mikkelson entered into three secret agreements for the early settlement of the Promissory Note and Settlement Agreement. (*Id.* ¶ 46.) The Promissory Note was to be purchased and assigned to Schoentrup and Richmond at a discount. (*Id.* ¶ 47.) The third agreement included an undisclosed release, releasing the parties from their payment obligations under the Settlement Agreement in exchange for an early payment to Ms. Mikkelson of $159,008.60. (*Id.* ¶ 49.) Plaintiff alleges that not only were these transactions concealed from Snopes Media, but also the money paid to Ms. Mikkelson was sourced from Snopes Media's advertising revenues that had been withheld from Snopes since April 2016. (*Id.* ¶¶ 52–53.)

Defendant knew the funds she received were misappropriated or embezzled, due to the related litigation between Snopes Media and Proper Media that had been extensively

reported in the press. (*Id.* ¶ 56.) In addition, Defendant continues to withhold advertising revenues despite Snopes Media informing her that the revenues were stolen by Proper Media. (*Id.* ¶ 57.)

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. ANALYSIS

### A. Count One – Receipt of Stolen Property

California Penal Code § 496(c) authorizes persons injured by the receipt of stolen property to bring a civil action for three times the amount of actual damages, as well as attorneys' fees and costs. "A criminal conviction is not a prerequisite to recovery of treble damages." *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). Rather, "[a] violation may be found to have occurred if the person engaged in the conduct described in the statute." *Id.* To state a violation of the statute, a plaintiff must plead three elements: "(a) the property was stolen, and (b) the defendant was in possession of it, (c) knowing it was stolen." *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009) (citing *People v. Anderson*, 210 Cal. App. 3d 414, 420 (1989)). In addition, "assuming a defendant's knowledge that the property at issue is stolen, section 496, subdivision (a) may be violated in either of two ways: (1) by buying or receiving any property that has been stolen or (2) by conceal[ing], sell[ing], [or] withhold[ing] . . . any property from the owner." *People v. Brown*, 32 Cal. App. 5th 726, 732 (2019) (alterations in original). Defendant challenges whether Plaintiff has sufficiently stated that the property received was "stolen."

In *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210 (S.D. Cal. 2021), this Court held that for property to be "stolen" under § 496(a), the property must already have been stolen when it comes into a defendant's possession. *See Grouse River Outfitters Ltd. v. NetSuite, Inc.*, No. 16-CV-02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016) (finding plaintiff's money "was not 'stolen' when [defendant] allegedly defrauded [plaintiff] of it"); *cf. Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 971 (2018) (holding that plaintiff's labor was not "stolen" at the time [defendant] allegedly defrauded him out of the . . . compensation). The Northern District in *Grouse* found that the tense of the statutory language supported this view. 2016 WL 5930273, at *14 (noting that the first sentence of § 496(a) refers to "property that has been stolen or that has been obtained in any manner constituting theft").

Here, Defendant relies almost exclusively on *Siry Investments LP v. Farkhondepour* to argue that Plaintiff did not plead receipt of stolen property. 45 Cal. App. 5th 1098, 1133–37 (2020), *review granted*, 468 P.3d 701 (2020).[2] In *Siry*, the California Court of Appeal limited the scope of § 496 to exclude its application to any traditional tort claims. *Id.* at 1137. *Siry* involved improper diversion of rental income away from the limited partnership to which it was due, and to another entity controlled by the defendants, resulting in the plaintiff being underpaid. *Id.* at 1110. There, the wrongdoers who were diverting the funds were the same wrongdoers who were receiving the funds. *Id.* The court held that applying § 496 to cases involving any type of conduct qualifying as "theft"— including the traditional breach of fiduciary duty and fraud at issue—would cause significant changes by expanding the traditional tort remedy from actual damages to treble damages and "effectively repeal[ing]" the punitive damages statute by allowing plaintiffs to recover treble damages by a preponderance of the evidence. *Id.* at 1134–36 (citing Cal. Civ. Code § 3294(a) (requiring plaintiffs to show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" to obtain punitive damages)). Instead, the court held that § 496 does not "provide the remedy of treble damages for torts not involving stolen property." *Id.* at 1137.

Defendant's reliance on *Siry* is misplaced. The main principle in *Siry* is that in "cases where the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft [by the defendant] that does not involve "stolen" property," the plaintiff is not entitled to treble damages. 45 Cal. App. 5th at 1134. Here, Plaintiff alleges far more than simple diversion of business funds and does in fact allege receipt of property that had the character of being stolen when it was received. *See Grouse River*, 2016 WL 5930273, at *14. Plaintiff alleges two distinct alternatives,

---

[2] The California Supreme Court granted a petition for review in *Siry* on July 8, 2020. An issue presented on review is whether a trial court may award treble damages and attorney fees under § 496(c) in a case involving fraud. *See Siry*, 468 P.3d 701 (2020). The appeal is pending and scheduled for argument. Despite this, the Court considers *Siry* here to dispose of Defendant's arguments.

which are not controlled by the reasoning in *Siry*. Specifically, Plaintiff claims: (1) Proper Media embezzled, misappropriated, and stole advertising revenue from Snopes Media and subsequently Ms. Mikkelson received the revenue and then concealed or withheld it, and (2) Ms. Mikkelson engaged in extortion, thereby violating § 496(a) by receiving funds directly obtained through extortion.

### 1. Embezzlement and Misappropriation Claims

Under California law, embezzlement is "the fraudulent appropriation of property by a person to whom it has been [e]ntrusted." Cal. Penal Code § 503. Embezzlement occurs when an owner entrusts property to an individual, and then the individual fraudulently converts the property for her benefit intending to deprive the owner of that property. *See People v. Selivanov*, 5 Cal. App. 5th 726, 764 (2016) (citing *People v. Fenderson*, 188 Cal. App. 4th 625, 636–37 (2010)). Embezzlement has long been recognized as a type of theft for the purposes of § 496(a). *See People v. Kunkin*, 9 Cal. 3d 245, 251 (1973).

In the complaint, Plaintiff alleges Snopes Media entrusted revenues to Proper Media through the GSA where Proper Media contracted to invoice, collect, and disperse revenues to Snopes Media. (FAC ¶¶ 11, 13, 15.) Funds were withheld from Snopes Media starting in April 2016 while Ms. Mikkelson was the Snopes Media bookkeeper. (*Id.* ¶ 23.) The funds due to Snopes Media under the GSA continued to be withheld from Snopes Media when Schoentrup took over as bookkeeper. (*Id.* ¶¶ 25, 30–31.) Schoentrup failed to provide advertising invoices to Snopes Media for the entirety of his time as bookkeeper. (*Id.* ¶ 34.) Proper Media withheld advertising revenues from April to May 2016 and then diverted those revenues due to Snopes Media under the GSA to purchase Ms. Mikkelson's 50% interest in Snopes. (*Id.* ¶¶ 25–29.) Proper Media continued to withhold and embezzle the advertising revenues due to Snopes Media in order to pay Ms. Mikkelson under the Stock Purchase Agreement's promissory note through 2017. (*Id.* ¶ 30.)

Following the alleged extortion by Ms. Mikkelson, Proper Media entered into a series of agreements to settle the claims made by Ms. Mikkelson and to settle the Promissory Note by assigning it to Schoentrup and Richmond. (*Id.* ¶¶ 46–47.) Not only

were the funds for this assignment paid using unlawfully withheld advertising revenues from Snopes Media, but also the third agreement between the parties released them from their payment obligations in exchange for a payment for $159,008.60. (*Id.* ¶¶ 48–49.) This money was paid using withheld advertising revenues. (*Id.* ¶ 52.) Lastly, when Proper Media eventually provided invoices for the withheld advertising revenues, there was a $159,008.60 withholding for "Barbara Mikkelson Settlement Payment." (*Id.* ¶ 55.)

Taking these facts as true, the Court finds Defendant's *Siry* argument to be unpersuasive. Plaintiff alleges that Proper Media embezzled the money, and when Ms. Mikkelson received the money, it already had the character of being stolen. Therefore, Plaintiff is not alleging that Defendant herself defrauded Plaintiff or misappropriated or embezzled funds. *See Grouse*, 2016 WL 5930273, at *14; *see also Allure Labs, Inc. v. Markushevska*, 606 B.R. 51, 59 (N.D. Cal. 2019). Hence, this case is distinguishable from *Siry* and *Hueso*.

In addition, Plaintiff claims that after receiving the money from Proper Media, Ms. Mikkelson subsequently concealed or withheld those funds, knowing that they were stolen, a separate violation of the statute. *See Brown*, 32 Cal. App. 5th at 732. "Receiving stolen property and concealing stolen property are separate offenses." *Id.* (alteration omitted) (quoting *Williams v. Superior Ct.*, 81 Cal. App. 3d 330, 343 (1978)). "Concealment of stolen property consists of the act of 'intentionally secreting stolen property . . . [and failing] to disclose its whereabouts' to its rightful owner." *Allure Labs*, 606 B.R. at 60 (quoting *People v. Allen*, 21 Cal. 4th 846, 861 n.14 (1999)). Plaintiff states that Ms. Mikkelson was notified that she was in receipt of stolen funds, and she continued to withhold those funds. (FAC ¶ 57.) In addition, Plaintiff states that Ms. Mikkelson concealed the funds and the relationship with Proper Media despite Ms. Mikkelson knowing that the funds were unlawfully withheld advertising revenues due to Snopes Media. (*Id.* ¶¶ 32, 53.)

### 2. Extortion Claim

California Penal Code § 496(a) includes a violation for receiving property that "has been obtained in any manner constituting . . . extortion." Under California law, extortion is defined as "the obtaining of property or other consideration from another, with his or her consent . . . induced by a wrongful use of force or fear." Cal. Penal Code § 518. Fear sufficient to constitute extortion under California Penal Code § 519 includes threatening "[t]o do an unlawful injury to the person or property of the individual threatened or of a third person" or "[t]o expose a secret affecting him, her, or them."

Defendant argues that the extortion action alleged here does not amount to receipt of stolen property. Instead, Defendant argues the extortion claim is akin to a breach of contract claim because Proper Media violated the GSA in paying Ms. Mikkelson instead of paying funds owed to Snopes Media. Similarly, Defendant claims that Ms. Mikkelson simply engaged in the passive "receipt of funds owed to her," and thus there is not a sufficient claim for receipt of stolen funds by extortion. (Mot. to Dismiss 4:17, ECF No. 4.) Defendant overlooks the facts alleged in the complaint. After Ms. Mikkelson and Proper Media had entered into the SPA, Ms. Mikkelson approached Schoentrup and demanded additional money on top of that already owed to her under the SPA. (FAC ¶ 35.) She claimed these additional funds were outstanding income owed to her. She followed up this demand with express written threats to "disseminate false and defamatory information" about her ex-husband to the news media. (*Id.* ¶ 36.) She threatened that the information she would disseminate would hurt Snopes Media and her ex-husband, resulting in a reduction in Snopes's share value. (*Id.*) Following these threats, Ms. Mikkelson and Schoentrup entered into the confidential "Settlement Agreement" despite Ms. Mikkelson knowing Schoentrup had no authority to enter into agreements on behalf of Snopes Media. (*Id.* 37.) These facts sufficiently allege that Ms. Mikkelson received property that has been obtained through extortion.

Thus, the Court denies Defendant's motion to dismiss as to the claim for receipt of stolen funds.

### B. Count Two – Unjust Enrichment

Defendant argues that Plaintiff does not adequately state a claim for unjust enrichment because under California law, there is no standalone claim for unjust enrichment. The Court is not persuaded by Defendant's argument and denies the motion to dismiss as to this claim.

California courts disagree on whether there is a standalone cause of action for unjust enrichment. *Compare Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014) (allowing plaintiffs to state a cause of action for unjust enrichment), *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment."). However, the Ninth Circuit considered this issue and reasoned that an unjust enrichment claim can proceed as either "a claim for relief as an independent cause of action or as a quasi-contract claim for restitution." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In *ESG Capital Partners, LP*, defendants were paying themselves funds out of a client trust account, despite promising the clients that the funds were refundable. 828 F.3d at 1039. The court allowed the claim for unjust enrichment to proceed as an independent cause of action or, in the alternative, as a claim based on quasi-contract. *Id.* Therefore, unjust enrichment claims can proceed outside of quasi-contract. *Id.*

Moreover, the Court finds Plaintiff states a plausible unjust enrichment claim. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* at 1038. Here, Plaintiff alleges that Ms. Mikkelson received funds from Proper Media she knew were obtained through embezzlement by Proper Media or obtained from Proper Media by her own extortion. (FAC ¶¶ 36–37, 49–50, 56–57, 63.) When Proper Media bought Ms. Mikkelson's 50% interest, the funds used were unlawfully withheld advertising revenues due to Snopes Media, as evidenced by the lack of payment to Snopes and the lack of any invoices during this time period. (*Id.* ¶¶ 30, 34.) Ms. Mikkelson was made aware that the money used to pay her was embezzled due to the ongoing litigation between Snopes Media

and Proper Media in which she was mentioned, and for which she produced 1,480 documents. (*Id.* ¶¶ 54, 56.) In the alternative, Ms. Mikkelson had knowledge that she was in receipt of stolen funds because she herself extorted the funds. (*Id.* ¶¶ 35–37.) Ms. Mikkelson concealed her agreements with Proper Media from Snopes Media. (*Id.* ¶ 53.) Plaintiff also alleges that Ms. Mikkelson still retains money owed to Snopes Media despite the fact that it informed her that the money was stolen. (*Id.* ¶ 57.) Snopes Media continues to be harmed by the retention of the advertising revenues by Ms. Mikkelson. (*Id.* ¶¶ 66–70.) Thus, Plaintiff states a plausible claim. *See ESG Cap. Partners*, 828 F.3d at 1038.

Finally, Defendant argues that this claim cannot proceed under quasi-contract because Plaintiff and Defendant are not in privity, without citing any authority. The Court similarly finds this last argument unpersuasive.

In sum, the Court denies Defendant's motion to dismiss the claim for unjust enrichment.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss (ECF No. 4) Plaintiff's claims for (1) violation of California Penal Code § 496 (receipt of stolen funds) and (2) unjust enrichment.

**IT IS SO ORDERED.**

**DATED: May 2, 2022**

Hon. Cynthia Bashant
United States District Judge